[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case was returned to this court on June 4, 1991. On October 2, 1991, this case was claimed for the limited contested list indicating that monetary awards, real property, personal property or visitation rights were in dispute. The wife's original attorneys were the law firm of Cummings Lockwood, in particular a William T. Fitzmorris signed the writ, summons and complaint. Issue was joined on June 26, 1991 when an answer and counterclaim was filed. This was filed by Attorney Richard Albrecht of the law firm of Cohen and Wolf representing the husband. On June 28, 1991, the law firm of Cummings Lockwood filed a motion to withdraw appearance, which motion was not acted on by the court. Thereafter, on September 4, 1991, Attorney Eileen M. Ellsworth from the Greenwich, Connecticut law firm of Gilbride, Tusa, Last and Spellane filed her appearance in lieu of Cummings Lockwood.
Thereafter, on November 4, 1991, the Honorable Myron Ballen heard pendente lite motions and ordered unallocated alimony and support of $250.00 a week plus the husband was to pay certain basic expenses of the home by using his best efforts to make those payments on the home.
Thereafter, on November 25, 1991, Attorney Allan S. Mall filed his appearance for the wife, which appearance was in lieu of Attorney Ellsworth's appearance and her firm's appearance. Attorney Mall filed, on December 18, 1991, a request that the case be assigned to the list of March 2, 1992. CT Page 2490 He indicated in that request that he was new counsel and that disclosure was not provided and that he could not prepare the case by January 4, 1992, which was the day the case was assigned for trial. He asked for March 2, 1992 in his request.
On December 31, a request to amend the counterclaim was filed by Attorney Albrecht for the husband. Attached to that request was the amended counterclaim which amended the claim in his counterclaim in paragraph two to "sole or joint custody of the minor children as provided in 46b-61 of the Connecticut General Statutes." No objection was filed to that request to revise: therefore, under the rules of practice, it was granted 30 days after the request was filed.
This case was then assigned for trial on March 10, 1992. At that time the wife, through her attorney, filed a motion for continuance dated March 10, 1992, and filed on said date. A hearing was held on that motion before the Honorable Myron Ballen, the Presiding Judge for the Family Relations Division, Part S and D. After hearing, Judge Ballen denied the request for continuance and ordered the wife and her attorney to commence the trial at 2:00 p.m. before the Honorable Edward R. Karazin, Jr., Judge of the Superior Court. The caveat to that order was that the wife should be allowed to present her evidence concerning certain American Express billing statements before a final decision was rendered in the case. Judge Ballen also ordered that there be expeditious production of these records by the husband and that the wife seek them out herself. (See motion and attachments appended hereto and made a part hereof.)
Thereafter, at 2:00 p.m., the case appeared before the undersigned and in open court Attorney Allan Mall indicated that his client was not there and restated his objection to proceeding to trial. He was advised, again, of Judge Ballen's ruling on the motion for continuance, and he indicated that he would attempt to call his client at her home. That call was made and there was no answer. The court then told Mr. Mall to proceed with his case since he was the plaintiff. The husband was ready to proceed and was demanding his trial. Attorney Mall chose not only to present no evidence but to absent himself from the courtroom. He indicated on the record that he was not prepared to try this case and chose not to be present during the proceedings. The court advised him that the would be defaulted (the court used the word "defaulted", but since he was the plaintiff, the correct term would have been a nonsuit) if he left the court since that would enter for failure to appear at trial and/or prosecute the action. Despite that, Mr. Mall left the court. Thereafter, Attorney Albrecht made a motion for a nonsuit which the court granted for the plaintiff's failure to CT Page 2491 appear at trial and prosecute the case under Section 351 of the Practice Book.
The court then heard the husband's evidence. Although the court had requested all of the necessary documents from the wife's attorney, he presented none of them. In particular, he did not present a current financial affidavit. The court then heard testimony of the husband, James T. Hill. The husband proceeded on his counterclaim.
The parties were married on February 7, 1976, in New York City, New York. The wife's maiden name was Luba Naumow. The court finds it has jurisdiction in that one of the parties has resided continuously in the State of Connecticut for at east 12 months preceding the date of the filing of the complaint. The following minor children are lawful issue of the marriage, to wit: Laura Christine Hill born August 25, 1977, Jennifer Anne Hill born September 5, 1979, Leslie Alexandra Hill born March 12, 1982 and James Michael Hill born July 21, 1983. No other children have been born to the wife since the date of the marriage. No individual or agency is presently responsible by virtue of judicial award for the custody or support of any such minor child mentioned above and neither of the parties have received state assistance.
The wife presented no financial affidavit at the trial but the court reviewed her financial affidavit in the file dated October 17, 1991, which was the basis of the orders of Judge Ballen on November 4, 1991.
The husband testified in detail concerning his financial affidavit and indicated that he is presently unemployed and that his current unemployment compensation is $300.00 per week or $1,290.00 per month. He lost his job on July 5, 1991. He was working for Paine Webber and was making $150,000.00 a year plus bonus. He was the Managing Director, Manager of the Financial Institution Group, part of the Institutional Banking Division. His tax returns for the years 1990 and 1989 were introduced into evidence as defendant's Exhibits One and Two. Defendant's Exhibit One, the 1990 income tax return, showed that his line 7, wages, salaries, etc., was $647,727.00. In addition, he had other income that brought his total gross income to $668,309.00 as shown on Exhibit One.
Defendant's Exhibit Two, the tax return for 1989. showed gross income from wages and salaries on line 7 of $390,274.00. His gross income was $413,923.00 with income from other sources. The man has substantial earning capacity.
He grew up in Kansas City, Missouri, attended Harvard CT Page 2492 undergraduate and attended Harvard for a Master's in Business Administration and was on a fellowship there. He had been with Solomon Brothers before he left to join Paine Webber. His termination was involuntary, and he has been seeking employment since his termination. He has found no other job. He should have made, from November 4, 1991, the date of the court order through November 13 (three days after the hearing), payments in the total sum of $4,500.00 which would have been 18 weeks times $250.00 per week. His records indicate that he is in arrears on the pendente lite order $755.25 since he paid only $3,744.75. The court finds that amount to be due and orders it to be paid within ten (10) days of the date of this decision.
The major asset of the parties is the real estate owned at 70 Midwood Road, Greenwich, Connecticut. That property was shown on defendant's Exhibit 3 as a magnificent, colonial-style building presently listed for sale at $4,900,000.00. The property was listed for sale on March 4, 1992, and will be listed for six months to carry it through approximately September 4, 1992. The husband's testimony was that both he and his wife desire that that house be sold.
In approximately 1986 the house was purchased for approximately $1,800,000.00. It appears the date of the purchase was approximately September 6 of 1986. Improvements were done to the house in the magnitude of somewhere between $750,000.00 and $800,000.00. The husband's testimony was that the wife had contributed no money to the acquisition or the, preservation of that asset or any of the assets.
The wife at the time of the marriage was a cosmetics buyer at Bergdorf Goodman and was earning somewhere between $20,000.00 and $22,000.00 at the time of the marriage. She was laid off on her return from the honeymoon and has not worked outside the house since.
The husband's financial affidavit shows various vehicles used by the parties. The checking account shows a negative balance at the Republic National Bank. He has no stocks, bonds, or mutual funds. He presently has almost $3,000,000.00 in life insurance. There is other personal property jointly owned by the parties as listed on Section 2(F) totaling $523,215.00 based on his values.
The wife on her affidavit lists approximately $200,000.00 in section three as personal property and another $68,000.00 in jewelry in section four. She also lists, in section 7, art of approximately $15,000.00. It appears that her items are somewhat less than $300,000.00 for the approximately same items on the husband's affidavit. The wife showed no CT Page 2493 liabilities on her affidavit.
The house is presently under foreclosure because of default on a mortgage on the premises, and there is a law date of September 9, 1992 for said premises thus the reason for the husband's strong desire to pursue this case to judgment.
The husband reasonably expects that the house can be sold for $4,250,000.00. From that, he figures the costs of sale at approximately 6 per cent which would include a 4 1/2 per cent brokerage commission or $255,000.00 in total costs. That leaves approximately 3,995,000.00. Based on his computation, there is a capital gains tax to be paid of approximately 709,000.00. That would leave net cash available out of the house of $3,286,000.00 approximately. The proposal by the husband is that all of the parties' debt be paid off out of those proceeds. He approximates that the debt is $2,435,000.00. That debt consists of the liabilities as listed on his affidavit in the sum of $712,765.00 be paid: that the first mortgage principal of $1,485,277.00 be Paid: that the second mortgage principal of $223,330.00 be paid. The current total for the debts and the principal on first and second mortgages is $2,421,372.00. If we use his projected debt numbers there is equity of $851,000.00 approximately.
The husband described the wife's "runaway" fund that she had established during the course of the marriage that began in 1988 when she took funds from an account by virtue of a loan of approximately $50,000.00; thereafter added to that medical reimbursement checks of about $40,000.00 and thereafter added a New York refund tax in June of 1991 of approximately $19,000.00 and a check for $4,500.00 for a total of $113,500.00. This money was not shown on her affidavit, and he indicated she had spent it over the years. These funds were more particularly shown on defendant's Exhibit 4 introduced into evidence showing the total amount of the funds of approximately $113,500.00 and what happened to those funds thereafter.
This court has no intention of punishing the wife because she did not appear at trial and was nonsuited. This court has not rubber stamped the claims for relief submitted by the husband but has taken into consideration the testimony of the husband, the wife's financial affidavit as on file, dated October 17, 1991, the husband's financial affidavit, dated March 10, 1992, all the exhibits, all of the statutory criteria set forth in Connecticut General Statutes 46b-81, the assignment of property and transfer of title statute, 46b-82, the alimony statute, 46b-84, the child support statute, 46b-62, the attorney's fees statute, 46b-56, the custody statute, 46b-56a, joint custody statute, and all other relevant statutes and case CT Page 2494 law. Accordingly, the court orders as follows:
1. The marriage is dissolved on the grounds of irretrievable breakdown.
2. The court orders that the pendente lite order of Judge Ballen of November 4, 1991, continue in effect so that it is the order of this court that the husband continue to pay each Friday the support and alimony order of $250.00 per week. Judge Ballen ordered this to be an unallocated order. This court continues that unallocated order. The court has considered the statutory child support guidelines and finds that there is reason to deviate from the guidelines since the award of child support under the guidelines would be substantially less than this order. The husband, on the record, said he could not pay any more than he is paying now. The court finds it would be in the best interests of the children for an amount in excess of the guidelines to continue. The court finds other equitable factors to deviate from the guidelines since it would be inequitable or inappropriate to follow the guidelines in this case.
3. The court finds that the wife is to have as a minimum $1.00 per year alimony so that the unallocated order has as its component $1.00 per year ordered. The reason for this is that the husband has substantial earning capacity which, although is not presently being used to earn dollars, this court is of the opinion that based on his prior earning experience, he will once again earn substantially. The wife has no track record of earnings. She has been a mother and wife during the course of the marriage. Said alimony shall terminate on the death of the husband, the death of the wife, the remarriage of the wife or the cohabitation of the under the statute.
 This court was asked to make this alimony durational. The court has reviewed the relevant cases and finds that there is no basis for durational alimony in this case based on the testimony obtained. This court could only speculate and surmise as to what might happen in the future that would allow this woman to be in a position where she did not need periodic alimony.
 This court contemplates that when the husband is once again employed the wife will petition this court for an increase in alimony and child support.
4. The house known as 70 Midwood Road, Greenwich, Connecticut and more particularly described in the lis pendens in this CT Page 2495 file is ordered transferred to the husband pursuant to 46b-81 without further action of the wife. The court finds that it is in the best interests of the parties to sell these premises. The husband recited difficulties with the wife in obtaining the listing and anticipated problems when offers are made based on past dealings with her. The court has also taken into consideration her failure to cooperate and appear at trial in making this transfer. Accordingly, the property is transferred to him for the purposes of holding it in trust for himself and his wife and this order is done in order to expedite the sale. The husband is authorized to sell the house for any gross sales price in excess of $4,000,000.00. This is without further authorization of the court. Any amount below $4,000,000.00 the husband must petition the court for approval.
 On the sale of the premises, the following shall be paid from the gross sales price:
 (a) Normal costs of sale not to exceed 6 per cent of the gross sales price which sale includes but is not limited to reasonable attorney's fees for the sale, brokerage commission, real estate conveyance tax, recording fees, and the like.
 (b) The first mortgage on the premises in the principal amount of $1,485,277.00 is to be paid off plus costs.
 (c) The second mortgage in the principal sum of $223,330.00 is to be paid off plus costs.
 (d) The liabilities as shown in section three of the husband's affidavit that approximate $712,765.00 are to be paid off. (The court recognizes that interest will increase on some of these items and contemplates that that increased amount will be the amount paid off out of the proceeds of the sale.)
 (e) The capital gains tax that was estimated to be approximately $709,000.00 is to be held in escrow by the husband until the parties have done whatever they deem appropriate with the net proceeds and have reinvested or not and the tax responsibility is more fully determined. In the event the tax is in excess of $709,000.00 it shall be the responsibility of the husband for any amount over the $709,000.00. If the tax is less than the $709,000.00, the amount over the tax shall be distributed to the parties in the same fashion as the net proceeds as hereinafter set forth.
CT Page 2496
 (f) The husband is to file with the court an accounting of all expenses paid under item (a-e) before distributing to the parties the net proceeds. Said accounting shall be simultaneously filed with the wife. The wife shall within 15 days file any objections with the court. If none are filed the husband shall disburse the net proceeds.
 (g) The net proceeds after the payment of the above expenses shall be divided 60 per cent to the wife and 40 per cent to the husband.
5. The court orders joint custody to the parties meaning an award awarding legal custody of the minor children to both parents, providing for joint decision making by the parents and consultation on major issues. The principle residence of the children shall be with their mother so that the mother shall have physical custody of the children all as defined in 46b-56a. The husband shall have reasonable, flexible and liberal visitation with the children.
6. The medical coverage shall be continued for the benefit of the children, and the husband shall be responsible for the reasonably necessary medical expenses of the children not covered by the insurance. The husband shall keep the wife on his insurance policy for the maximum amount of time allowed under COBRA, and the husband shall pay for the premiums for the first year for the wife. Thereafter, she may have the coverage but she must pay for it herself.
7. The husband is to maintain life insurance for the benefit of the children in the sum of $750,000.00. The children are to be the equal beneficiaries. As each child reaches the age of 18, the husband may reduce the amount of insurance by 25 per cent. The husband shall carry $750,000.00 worth of life insurance for the benefit of the wife for as long as he is paying her any alimony.
8. The personal property shown on the husband's financial affidavit in section 2(F) is ordered referred to the Family Relations office for mediation. If the parties are unable to agree as to ownership, the property is ordered sold and the net funds are to be distributed 60 per cent to the wife and 40 per cent to the husband.
9. No counsel fees are awarded to either party.
10. The wife shall have ownership of the vehicles she presently drives. The husband shall have ownership of the vehicles he drives and the 1973 Porsche. The leased Mercedes to CT Page 2497 remain in the possession of the wife.
KARAZIN, JUDGE